**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **KAREN MICHAUD, and all others similarly situated**<br><br>**Plaintiff**<br><br>V.<br><br>**CENTER FOR TRANSITIONAL LIVING, LLC, Andy Tran and Jeffrey Farmer**<br>**Defendants** | **CIVIL ACTION NO.:**<br><br><br><br><br><br>**March 25, 2025** |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**I.   INTRODUCTION**

1. Employers of live-in Caregivers, who pay a day rate to these non-exempt employees, must pay overtime by dividing their weekly pay by their weekly hours and paying half the resulting regular rate for all overtime hours. 29 C.F.R. Sec. 778.112; *see also Kinkead v. Humana at Home, Inc.,* 450 F. Supp. 3d 162, 182–83 (D. Conn. 2020) ("The regular rate under the CMWA is calculated in the same manner as the regular rate is calculated under the FLSA."). Employers must accurately record all hours worked, including night-time interruptions caused by their clients when they need assistance in the night, and pay wages for those interruptions. 29 C.F.R. Sec. 552.110(b); 29 C.F.R. Sec. 552.102; 29 C.F.R. Sec. 785.23. When a live-in Caregiver is unable to obtain at least five uninterrupted hours of sleep because she is called to duty, then the entire sleep period counts as hours worked and must be paid. 29 C.F.R. Sec. 785.22. Finally, Connecticut employers of live-in Caregivers must obtain a written agreement from those workers in order to exclude their regularly scheduled sleeping periods from "hours worked." C.G.S.

Sec. 31-76b(2)(A); *Aboah v. Fairfield HealthCare Servs., Inc.*, 2024 WL 3552413, *17 (D. Conn. July 26, 2024).

2. Here, Defendants paid a day rate to their live-in Caregivers but did not pay them overtime as required by law, even though they were aware that they worked 91 hours per week, i.e., 51 overtime hours. Second, Defendants failed to accurately record all hours worked by their live-in Caregivers who were frequently interrupted during the night and failed to get at least 5 hours of uninterrupted sleep time. Nevertheless, Defendants assumed that their employees all had 8 hours of uninterrupted sleep time and failed to pay them for this time. Third, Defendants failed to obtain written agreements from their live-in Caregivers in Connecticut, including Plaintiff, to exclude their sleep time from hours worked, but excluded 8 hours for sleeping time each shift anyway.

3. As a result, Defendants kept hundreds of thousands of dollars in wages that it should have paid to Plaintiff and the class, all in violation of state and federal wage and hour laws.

## II.   JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's Fair Labor Standards Act ("FLSA") claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

### III. THE PARTIES

7. Plaintiff Karen Michaud is an individual residing in Gales Ferry, Connecticut. She worked as live-in Caregiver for Defendants in January and February 2025.

8. Defendant Center for Transitional Living, LLC (hereinafter "CTL") is a limited liability company organized and existing under the laws of the state of Connecticut. Its principal place of business is located at 325 Main Street, 2b, Farmington, Connecticut.

9. Defendant Andy Tran is a Managing Member and co-owner of Defendant CTL. His principal business address is 6 Executive Drive, Suite 120, Farmington, Connecticut.

10. Defendant Jeffrey Farmer is a Managing Member and co-owner of Defendant CTL. His principal business address is 6 Executive Drive, Suite 120, Farmington, Connecticut.

11. The Defendants have offices located in Connecticut and Massachusetts. Defendants employ live-in Caregivers in Connecticut, Massachusetts, and Rhode Island.

12. At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

13. Upon information and belief, at all relevant times, Defendants have had gross annual revenues in excess of $500,000.

14. At all relevant times, Defendant CTL was the "employer" of Plaintiff and each of their employees as that term is defined by the FLSA, the Connecticut Minimum Wage Act ("CMWA"), the Massachusetts Wage Act ("MWA"), and the Rhode Island Minimum Wage Act ("RIMWA").

15. Corporate officers and directors are individually liable under the FLSA when they: (1) have the power to hire and fire employees; (2) supervise and control employee work schedules and conditions of employment; (3) determine the rate and method of compensation; and/or (4) maintain employment records. Defendant Tran's and Defendant Farmer's exercise of that authority was the direct cause of failure to pay wages as set forth below. Accordingly, Defendant Tran and Defendant Farmer are employers of Plaintiff and all other similarly situated individuals as that term is defined in the FLSA.

16. The CMWA provides that "'employer' means any owner or any person … acting directly as, or on behalf of, or in the interest of an employer in relation to employees[.]" C.G.S. Sec. 31-68(d).

17. Defendant Tran and Defendant Farmer are employers of all Connecticut employees of Defendant CTL because they are "co-owners" or in the alternative because they both "act directly as, or on behalf of, or in the interest of [CTL] as it relates to employees."

18. The MWA states that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section." M.G.L. c. 149 §§ 148, 150. Defendant Tran and Defendant Farmer are employers of all

4

Massachusetts' employees of Defendant CTL based on their status within that corporate defendant.

19. The RIMWA defines employer to "include[] any individual, ... or any person, or group of persons, acting directly, or indirectly, in the interest of an employer, in relation to an employee. 28 R.I. Gen. Laws Ann. § 28-12-2. Defendant Tran's and Defendant Farmer's exercise of their authority was the direct cause of failure to pay wages as set forth below. Accordingly, Defendant Tran and Defendant Farmer are employers of all Rhode Island employees of CTL under the RIMWA.

20. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.§216(b). The named Plaintiff's written consent is attached hereto and incorporated by reference.

## IV. LEGAL PRINCIPLES

21. Employers must pay overtime to their non-exempt workers when they work more than 40 hours in a work week. 29 U.S.C. Sec. 201, *et seq.*; C.G.S. Sec. 31-58, *et seq.*; Mass. Gen. Laws Ann. ch. 151, § 1B; 28 R.I. Gen. Laws Ann. § 28-14-19.2(a).

22. Employers who pay their non-exempt workers a daily rate must add overtime premiums to those employees' weekly pay calculated by dividing the weekly pay by the number of hours worked and paying half of the resulting regular rate for all overtime hours. 29 C.F.R. Sec. 778.112.

23. Employers must ensure that their live-in caregivers get at least five hours of uninterrupted sleep time each night during their eight-hour sleep period, otherwise the employer must pay for the entire eight hour sleep period. 29 C.F.R. Sec. 785.22 and 29 C.F.R. Sec. 552.102.

24. When a live-in Caregiver is unable to obtain at least five hours of uninterrupted sleep because of calls to duty (i.e., attending to their clients), then the employer must pay them wages for the entire sleep period. 29 C.F.R. Sec. 785.22(b).

25. In Connecticut, "when an individual employed by a third-party provider to provide "companionship services", as defined in the regulations of the federal Fair Labor Standards Act, is required to be present at a worksite for a period of not less than twenty-four consecutive hours, such individual and his or her employer *may agree in writing* to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked[.]" C.G.S. Sec. 31-76b(2)(D) (emphasis added).

26. If an employer fails to obtain an agreement in writing to exclude such sleep time, then the employer must count that sleep time as "hours worked" and pay wages for it. *Aboah*, 2024 WL 3552413, at *17 ("Failure to compensate live-in caregivers for sleep time absent a written agreement to do so entitles Plaintiffs to payment of unpaid sleep time under the CMWA.").

## V. FACTS

27. Defendants hired Plaintiff Karen Michaud to work as a live-in Caregiver in January 2025.

28. Defendants have employed over 200 live-in Caregivers in Connecticut, Massachusetts and Rhode Island during the period of the claim.

29. Defendants' Caregivers perform non-exempt "companionship services" for Defendants' clients including assisting clients with activities of daily living.

30. Those "companionship services" include cooking and serving clients meals, bathing clients, helping clients get dressed and change clothes as needed, helping

6

clients use the bathroom including cleaning themselves up and changing their clothes, staying with the client while they watch television or eat, physically watching over the client during the day and remaining within eyesight or earshot of the customer, including placing an electronic device in the client's room to monitor them, assisting clients with taking medication, and bringing them to medical appointments.

31. Defendants paid Plaintiff and a class of live-in Caregivers during the period of the claim a flat daily rate for their work and did not calculate and pay overtime premiums as required by 29 C.F.R. 778.112 and applicable state law.

32. For example, Defendants paid Plaintiff Karen Michaud a daily rate of $240.00.

33. Defendants informed Plaintiff and all of their live-in Caregivers that they were allowed eight hours of sleep time and three one-hour meal breaks per day. This schedule resulted in a minimum of thirteen hours per day of work.

34. Over a 7-day work week, this schedule resulted in a minimum of 91 hours of work time, 51 of which was overtime.

35. For example, during a typical week, Plaintiff worked as a live-in Caregiver for seven (7) days at a rate of $240 per day. According to her assigned schedule, she worked a minimum of 91 hours for a seven-day week. Defendants paid her $1,680 for her work per week.

36. Defendants should have calculated overtime by dividing $1,680 by 91 hours worked, resulting in a regular rate of $18.46 per hour. Defendants should have paid half that rate, or $9.23 per hour, for each of Plaintiff's 51 hours of overtime (the number of hours beyond 40 in a week), adding $470.00 to her pay for that week.

37. Instead, Defendants paid her only $1,680 for that week and failed to pay her the overtime premiums due under the law.

38. Plaintiff, and Defendants' other live-in Caregivers, were frequently interrupted during their sleep time to care for Defendants' clients. Defendants' clients frequently needed to be attended to during the night for such reasons as trips to the bathroom, dementia, insomnia, to monitor clients' medical devices such as a ventilator or breathing machine with its oxygen tank.

39. In fact, Defendants' clients frequently interrupted Plaintiff and other live-in Caregivers, meaning they were unable to have at least five hours of uninterrupted sleep time per night. As a result, the sleep periods of Plaintiff and the class were compensable under federal and state law, but Defendants refused to pay them for that time.

40. Defendants should have paid their live-in Caregivers for their entire eight (8) hour sleep periods at one and a half times a regular rate. In Plaintiff's cases, Defendants should have paid her $221.52 (regular rate of $18.46 x 1.5 = $27.69 x 8 hours = $221.52) each night she could not receive five hours of uninterrupted sleep.

41. Defendants did not obtain agreements in writing from their Connecticut live-in Caregivers, including the Plaintiff, to exclude their sleep time from hours worked.

## VI. THE FLSA COLLECTIVE

42. Plaintiff brings claims under 29 U.S.C. § 216(b) of the FLSA on behalf of herself and all other live-in Caregivers who have worked for Defendants in Connecticut, Massachusetts and Rhode Island from the period beginning from three years before the filing of the complaint until the date of final judgment in this matter.

43. Plaintiff and the other live-in Caregivers are similarly situated in that they are all subject to Defendant's common plan or practice of (1) designating them as exempt from the overtime requirements of FLSA when they do not qualify for an exemption from the overtime provisions of the FLSA, and (2) failing to pay them overtime premiums when their sleep time is interrupted such that they do not receive five hours of uninterrupted sleep.

44. Defendants' violations of the FLSA as discussed above were knowing and willful. Rather than pay Plaintiff and the FLSA Collective the wages they were due, they instead retained those wages for their own use and benefit.

45. The law has been settled for over a decade that third-party providers of live-in companionship services such as Defendants must pay those workers overtime:

> Third party employers of direct care workers (such as home care staffing agencies) are not permitted to claim the exemption for companionship services. Third party employers may not claim the exemption even when the employee performs companionship services and is jointly employed by the third party employer and the individual, family, or household using the services. Accordingly, third party employers must pay their workers the Federal minimum wage for all hours worked and overtime pay at time and one-half of the regular rate of pay for all hours worked over 40 in a workweek.

U.S. DEP'T OF LABOR, Fact Sheet # 79A: Companionship Services Under the Fair Labor Standards Act (FLSA) (Sept. 2013), *available at https://www.dol.gov/agencies/whd/fact-sheets/79a-flsa-companionship.*

46. Defendants were aware that their live-in Caregivers suffered sleep interruptions at nighttime because Plaintiff and other live-in Caregivers informed Defendants of these interruptions but did not receive payment for that time.

47. In fact, in February 2025, Plaintiff specifically informed Defendants that she was interrupted during her sleep periods such that she was not able to sleep for five

hours of uninterrupted time. Rather than pay her, Defendants removed her from that client and offered her hourly work instead.

## VII. THE RULE 23 CLASS

48. Plaintiff brings claims state law claims for Defendants' Connecticut, Massachusetts, and Rhode Island employees under Rule 23 of the Federal Rules of Civil Procedure, for herself and on behalf of the following classes:

> **Day Rate Class**: All live-in Caregivers employed by Defendants in Connecticut during the period beginning two (2) years prior to the filing of this lawsuit, until the date of final judgment in this matter, and all live-in Caregivers employed by Defendants in Massachusetts and Rhode Island during the period beginning three (3) years prior to the filing of this lawsuit, until the date of final judgment in this matter.

> **Connecticut Sleep Agreement Class**: All live-in Caregivers employed by Defendants in Connecticut during the period beginning two (2) years prior to the filing of this lawsuit, until the date of final judgment in this matter.

49. Class certification for these claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

50. The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed approximately 200 live-in Caregivers at any one time, and within normal turnover, over 300 during the past 3 years.

51. There are questions of law and fact common to the class, including whether the putative class members worked overtime but were not paid overtime in violation of Connecticut, Massachusetts and Rhode Island law, and whether Defendants failed to obtain written sleep agreements from their Connecticut employees to exclude their sleep time from "hours worked."

52. The named Plaintiff's claims are typical of those of the class members. Plaintiff's claims encompass the challenged practices and course of conduct of

10

Defendants. Furthermore, Plaintiff's legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiff and to the class.

53. The named Plaintiff will fairly and adequately protect the interests of the class. The Plaintiff's claims are not antagonistic to those of the putative class and she has hired counsel skilled in the prosecution of class actions.

54. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

55. Class status for the combined Connecticut, Massachusetts, and Rhode Island "Day Rate" class is appropriate because the legal claims of the class members in each state is the same, and the laws of each state are similar in their overtime requirements. *See Quint v. Vail Resorts, Inc.*, 2022 WL 4550087, at *2 (D. Colo. July 8, 2022) (denying motion to dismiss employment claims under state law brought for states where named plaintiffs did not live or work); *Rodriguez v. PPG Indus., Inc.*, 2023 WL 2435476, at *6 (W.D. Pa. Jan. 27, 2023), *report and recommendation adopted in part, rejected in part,* 2023 WL 2422189 (W.D. Pa. Mar. 9, 2023).

56. The class is readily ascertainable from Defendants' payroll and timekeeping records relating to each employee.

## VIII.  LEGAL CLAIMS

**COUNT ONE:**     **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201, *et seq.* against Defendant CTL**

57.     Based on the foregoing, Defendant CTL's conduct, including failing to pay its live-in Caregivers overtime wages for their hours over 40 and failing to pay them addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time, constitutes was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

58.     Plaintiff and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT TWO:**     **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201, *et seq.* against Defendant Andy Tran**

59.     Based on the foregoing, Defendant Trans's conduct, including failing to pay his live-in Caregivers overtime wages for their hours over 40 and failing to pay them addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time, constitutes was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

60.     Plaintiff and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT THREE:**     **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201, *et seq.* against Defendant Jeffrey Farmer**

61.     Based on the foregoing, Defendant Farmer's conduct, including failing to pay his live-in Caregivers overtime wages for their hours over 40 and failing to pay them

addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time, constitutes was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

62. Plaintiff and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT FOUR:** **VIOLATION OF C.G.S. Sec. 31-68 ("CMWA"), Mass. Gen. Laws Ann. ch. 151, § 1B ("MWA") and 28 R.I. Gen. Laws Ann. § 28-14-19.2(a) ("RIMWA") as to Defendant CTL**

63. Based on the foregoing, Defendant CTL's conduct, including failing to pay its live-in Caregivers overtime wages for their hours over 40 and failing to pay them addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time violated the CMWA, MWA, and RIMWA.

64. Additionally, Defendant CTL's conduct in failing to pay its Connecticut live-in Caregivers for their sleep time without first obtaining a written agreement to exclude that time violated the CMWA.

65. Accordingly, Plaintiff and all other live-in Caregivers employed in those states are entitled to compensation for all overtime hours worked, statutory liquidated and / or penalty damages, attorneys' fees and court costs.

**COUNT FIVE:** **VIOLATION OF C.G.S. Sec. 31-68 ("CMWA"), Mass. Gen. Laws Ann. ch. 151, § 1B ("MWA") and 28 R.I. Gen. Laws Ann. § 28-14-19.2(a) ("RIMWA") as to Defendant Jeffrey Farmer**

66. Based on the foregoing, Defendant Tran's conduct, including failing to pay his live-in Caregivers overtime wages for their hours over 40 and failing to pay them

addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time violated the CMWA, MWA, and RIMWA.

67. Additionally, Defendant Tran's conduct in failing to pay his Connecticut live-in Caregivers for their sleep time without first obtaining a written agreement to exclude that time violated the CMWA.

68. Accordingly, Plaintiff and all other live-in Caregivers employed in those states are entitled to compensation for all overtime hours worked, statutory liquidated and / or penalty damages, attorneys' fees and court costs.

**COUNT SIX:** **VIOLATION OF C.G.S. Sec. 31-68 ("CMWA"), Mass. Gen. Laws Ann. ch. 151, § 1B ("MWA") and 28 R.I. Gen. Laws Ann. § 28-14-19.2(a) ("RIMWA") as to Defendant Jeffrey Farmer**

69. Based on the foregoing, Defendant Farmer's conduct, including failing to pay his live-in Caregivers overtime wages for their hours over 40 and failing to pay them addition overtime wages when their sleep time was interrupted by calls to duty and when they did not receive five hours of uninterrupted sleep time violated the CMWA, MWA, and RIMWA.

70. Additionally, Defendant Farmer's conduct in failing to pay his Connecticut live-in Caregivers for their sleep time without first obtaining a written agreement to exclude that time violated the CMWA.

71. Accordingly, Plaintiff and all other live-in Caregivers employed in those states are entitled to compensation for all overtime hours worked, statutory liquidated and / or penalty damages, attorneys' fees and court costs.

## DEMAND FOR RELIEF

Plaintiff claims:

a. Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b. Certification of the class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiff and her counsel to represent those classes;

c. An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d. An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

e. An award of unpaid overtime wages under the Connecticut, Massachusetts and Rhode Island Wage Acts;

f. An award of penalty damages under CMWA;

g. An award of treble damages under the MWA;

h. An award of liquidated damages under the RIMWA;

i. Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

j. Attorneys' fees under the CMWA, MWA, and RIMWA;

k. Interests and costs; and

l. Such other relief as in law or equity may pertain.

## JURY DEMAND

Plaintiff demands a trial by jury by all issues so triable.

Karen Michaud, individually and on behalf of
other similarly situated individuals

By: _____
Richard E. Hayber (ct11629)
Thomas J. Durkin (ct30371)
Hayber McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
(860) 522-8888 telephone
(860) 218-9555 facsimile
rhayber@hayberlawfirm.com
tdurkin@hayberlawfirm.com